IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| George W. Keenan, <br>     Plaintiff, | ) <br> ) <br> ) |
| v. | )     1:19cv1399 (TSE/TCB) |
| | ) |
| Julie L. Jones, et al., <br>     Defendants. | ) <br> ) <br> ) |

**MEMORANDUM OPINION**

Plaintiff George W. Keenan ("Keenan" or "Plaintiff"), a Florida inmate housed within the Virginia Department of Corrections (VDOC) pursuant to an Interstate Corrections Compact, proceeding pro se, filed a civil action under 42 U.S.C. § 1983 in the United States District Court for the Northern District of Florida on February 8, 2019. Keenan v. Julie L. Jones, et al., No. 4:19cv81. The district court screened the complaint and directed that an amended complaint be filed. An amended complaint was filed on August 23, 2019. [Dkt. No. 19]. The civil action was transferred to this Court on November 1, 2019. [Dkt. No. 25]. On March 24, 2020, the Court reviewed the amended complaint and dismissed defendants Armor Correctional Health Services and Corizon Correctional Care because plaintiff had not stated a claim against either defendant, and then directed that the remaining defendants be served. [Dkt. No. 27].

Defendants Harold W. Clarke, A. David Robinson, Dr. Amonette, and Beth Cabell filed a motion to dismiss on June 26, 2020, with the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. Nos. 40-42]. Defendants Crystal Allen and Dr. Campbell filed a separate motion to dismiss on June 26, 2020, with the required notice required by Local Civil Rule 7(K) and Roseboro v. Garrison. [Dkt. Nos. 43-44]. Keenan filed a response opposing the defendants' motions [Dkt. No. 52]. On March 5, 2021, the Court

granted the motions to dismiss by all of the defendants with the exception of Dr. Campbell. [Dkt. Nos. 55-56].

Defendant Jones was served on June 17, 2021 [Dkt. No. 61], and following an extension of time, Jones filed a motion to dismiss, with the required notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, on August 9, 2021. [Dkt. Nos. 71-73]. Dr. Campbell filed an answer on that same day. [Dkt. No. 74]. Kennan sought and was granted an extension of time and filed a response to the motion to dismiss on November 16, 2021. [Dkt. No. 77]. The motion to dismiss argues that Keenan's claim is moot due to a change in circumstances, and Keenan has failed to state a claim against defendant Jones. For the reasons explained below, Defendant Jones' motion to dismiss must be granted.

## I. Undisputed Facts[1]

Defendant Jones' motion to dismiss asserts Keenan's amended complaint has been rendered moot by a change in circumstances due to Keenan's treatment for Hepatitis C, which Jones asserts resulted in Keenan being cured, and therefore Keenan's complaint is moot. Mootness raises the subject matter jurisdiction of the court based upon the facts alleged by the Plaintiff. See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In the case of a factual challenge, it is permissible for a district court to "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac Ry. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams, 697 F.2d at 1219). Defendant Jones attached recent medical documents and related documents to matters raised in the amended complaint. Keenan refers to several of the documents in support of his

---

[1] See Pension Ben. Guar. Corp. v. White Consol. Ind., 998 F.2d 1192, 1195 (3rd Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

opposition to the motion to dismiss and has not questioned or objected to the documents. See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) ("when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'"); Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

The following are the undisputed facts based upon review of the motion to dismiss, the unobjected to records (to include those attached to Keenan's original complaint as well as the motion to dismiss), and Keenan's sworn complaint and amended complaint.

*A. Background*

1. The FDOC transferred Keenan to the VDOC on November 10, 2010. [Dkt. No. 19 at 8].[2]

2. The result of tests performed on November 26, 2015 indicated Keenan had tested positive for Hepatitis-C (also referred to as "HCV" or "Hep-C"). [Dkt. No. 1 at 9, 17].

3. On December 9, 2015, Keenan requested "fibroscan treatment," which the FDOC denied on December 21, 2015. [Dkt. No. 1 at 28]. The request was made through the VDOC's Interstate Compact Coordinator and the response denying the request indicated it was denied "by the Office of Health Services per Corizon." [Dkt. Nos. 19 at 10; 70-1 at 13]. The denial referenced the data provided and the response indicated that Keenan's test results were

---

[2] Keenan was committed to the custody of the FDOC on February 4, 2002, and is due to be released on December 15, 2022. See http://www.dc.state.fl.us/OffenderSearch/InmateInfoMenu.aspx (Inmate Population Information Search, Search "Keenan, George") (last viewed Feb. 3, 2022).

below the "BOP guidelines," which the FDOC was following at that time, and that the data indicated Keenan was "safe for monitoring for now." [Dkt. No 70-1 at 13]. Under the interstate agreement, the FDOC (the sending state) had to approve any non-emergency medical treatment. [Dkt. No. 1 at 35].[3] After the request was denied, Keenan alleges defendant Dr. Campbell "took no further steps and stated he will monitor on site." [Dkt. No. 19 at 10].

4. On August 2, 2017, defendant Dr. Campbell sent a second request through channels to approve a fibroscan, which was "required as part of Hepatitis-C treatment work-up." [Dkt. No. 1 at 31]. Campbell noted the increase in Keenan's test scores on April 6, 2017, (the APRI was 0.726, and the FIB-4 was 0.86) in his August 2, 2017 request for the FDOC to approve a fibroscan as part of a Hepatitis-C treatment work-up." [Dkt. No. 70-1 at 19].

5. The VDOC's 2015 Guidelines for Hepatitis-C patients used two scores based upon blood tests to determine how to treat Hepatitis-C patients: an "Aspartate Aminotransferase to Platelet ratio" ("APRI") score and a "Fibrosis-4 index" ("FIB-4") score.[4]

---

[3] Under the interstate compact

> Inmates from the sending state shall receive such medical, psychiatric, and dental treatment as may be necessary to safeguard their health ... Unless an emergency is involved, the receiving state shall contact the sending state for advance authority in writing before incurring medical, psychiatric, or dental expense for which the sending state is responsible under the terms of this contract. In an emergency, the receiving state may proceed with the necessary treatment without prior authority, but in every such case the receiving state shall notify the sending state immediately and furnish full information regarding the nature of the illness, the type of treatment to be provided and the estimated cost thereof.
>
> (b) When … treatment requires removal of the inmate from the institution, the inmate shall be removed only after notification to the sending state. In the event of an emergency, which does not permit prior notification, the institution shall notify the sending state as promptly thereafter as practicable….
>
> (c) *Any ... cost shall be considered normal costs incidental to the operation of the receiving state if the service is rendered by staff personnel and in regularly maintained facilities operated or utilized by the institution as part of the health or correctional program thereof and if the inmate requires no special medication, drugs, equipment, anesthetics, surgery, or nursing care in addition to that commonly available on an infirmary basis. The costs of any special services, medication, equipment, surgical, or nursing care shall be chargeable to the sending state.*

[Dkt. No. 1 at 35] (emphasis added).

[4] See Hinton v. Amonette, No. 3:18cv59, 2021 U.S. Dist. LEXIS 16196, *10 (E.D. Va. Jan. 27, 2021).

- APRI score less than 0.5 and FIB-4 score less than 1.45: Offender is monitored but not referred to VCU for evaluation. Inmates in this category will receive periodic laboratory blood testing and chronic care appointments with a medical provider at the institution.

- APRI score of 0.5 to 1.5 and FIB-4 score is between 1.45 and 3.25: Indeterminate range; requires additional testing to determine whether the offender should be referred for evaluation.

- APRI score greater than 1.5 and FIB-4 score greater than 3.25: Offender is automatically referred to VCU for evaluation without any additional testing.

Id. at 10-11.

6. Keenan's medical records indicate that: on November 15, 2015, Keenan's APRI was 0.784 and his FIB-4 score was 0.86; on July 8, 2016, Keenan's APRI was 0.222 and his FIB-4 score was 0.69; on January 6, 2017, the APRI was 0.380, and the FIB-4 was 4.070; on April 6, 2017, the APRI was 0.726, and the FIB-4 was 0.86; and on October 6, 2018, the APRI was 0.466, and the FIB-4 score was 0.75. [Dkt. Nos. 1 at 19, 20, 21, 26; 70-1 at 13, 19, 21, 22].

7. The August 2, 2017 request was denied on October 17, 2017 by Dr. Cherry of Corizon Health Care:

> Currently Florida is following recent BOP guidelines and fibroscan is not recommended. Typically we prioritize based on APRI scores starting at 2.0. This is more an indication of cirrhosis and would be prioritized to a higher level of treatment. An APRI of 0.74 is safe for monitoring for now.

[Dkt. Nos. 19 at 10; 70-1 at 13, 14].

8. Prior to the denial, Keenan had filed a grievance with the VDOC. The Level I response from the warden on September 18, 2017 noted the prior denial in 2015 by FDOC, and that a request was currently pending with FDOC. The response also stated that Keenan's condition did not qualify as an emergency. The Level II response determined the grievance was unfounded and agreed with the Level I response. [Dkt. No. 1 at 8-13].

9. Approximately two months after the FDOC denied the request for a fibroscan, Keenan submitted a VDOC Offender Request form asking for a fibroscan on January 10, 2018.

5

Nurse Allen responded and told Keenan that a doctor's order was necessary for a fibroscan and because he was detained for Florida under the interstate compact, Florida had to approve the fibroscan and "Florida had said no twice to test." [Dkt. No. 1 at 32].

10. Keenan submitted another VDOC Offender Request form seeking a fibroscan on May 10, 2018 and Nurse Allen provided a similar response noting the FDOC had denied the request from Dr. Campbell twice. [Id. at 33].

11. Keenan submitted a third VDOC Offender Request on October 31, 2018 asking for VDOC to check with FDOC. The response from Ms. Searlemon stated that they were checking with Florida regarding any changes for Hepatitis-C offenders. [Id. at 34].

12. On February 8, 2019, Keenan filed his complaint in the United States District Court for the Northern District of Florida.

13. On February 13, 2019, Donna L. Graham, RN, Utilization Contract Monitor, Office of Health Services, FDOC, sent an email to K.C. Collins, Private/Interstate Coordinator, Office of Health Services, FDCO, informing Collins that a fibroscan had been approved for Keenan. [Dkt. No. 70-1 at 11]. An ultrasound was done in February 2019, and the fibroscan was done in June 2019. [Id. at 32].

14. Keenan's February 21, 2019 ultrasound showed his liver was "slightly enlarged …with mild fatty infiltration noted … but no masses or ductal dilation." [Id. at 34].

15. In March and April 2019, Collins asked VDOC personnel to inform Collins of the different medications available to treat Hepatitis-C and the cost of each, and that FDOC was authorizing treatment after review of the test results. [Id. at 5-9]. On April 9, 2019, Collins sent

an email to VDOC personnel informing them that FDOC had approved Keenan "to receive Epclusa x 84." [Dkt. No. 70-1 at 4]. Epclusa is a DAA used to treat Hepatitis-C.[5]

16. On May 2, 2019, the district court screened the complaint and directed that an amended complaint be filed. [Dkt. No. 7].

17. On August 23, 2019, Keenan filed his amended complaint. In the prayer for relief of the amended complaint, Keenan sought

> "prospective relief for evaluation/fibroscan to determine treatment and to begin receiving treatment as soon as practical to stop and reverse the deteriorating effects [of Hepatitis C]. Plaintiff seeks the costs of this action. Plaintiff seeks monetary relief for deliberate indifference, intentional callous disregard to Plaintiff's serious medical needs under the Eighth Amendment and any other appropriate relief ordered by the Court and/or is deemed proper."

[Dkt. No. 19 at 16].

18. The day before he filed the amended complaint, on August 22, 2019, another ultrasound was performed and found Keenan's liver was "unremarkable," "no evidence of cirrhosis or ascites," and "[n]o ductal dilation." [Dkt. No. 70-1 at 34]. His treatment with Epclusa began on November 15, 2019, and was completed on February 6, 2020. [Id. at 32].

19. The civil action was transferred to this Court on November 1, 2019. [Dkt. No. 25].

20. On May 11, 2020, Keenan was seen for a follow-up to his treatment, which had ended three months earlier. [Id.]. Keenan's abdomen was "[s]oft, nontender, nondistended. No ascites. Bowel sounds active." [Id. at 33].[6] The Hepatitis-C viral load was "[u]ndetectable." [Id.

---

[7] "DAA" drugs refer to "direct acting anti-virals," which are drugs used to treat Hepatitis-C. See https://hepatitisc.net/living/epclusa (last viewed Feb. 3, 2022).

[6] "Ascites" is a buildup of fluid in the abdomen "often due to severe liver disease" and the extra fluid increases the pressure in the abdomen, which "blocks blood flow in the liver" and "[o]ver time this keeps your kidneys from removing excess salt from your body" and "in turn, causes fluid to build up." https://www.webmd.com/digestive-disorders/ascites-medref (last viewed Feb. 3, 2022).

7

at 34]. An ultrasound conducted on March 16, 2020, six weeks after his treatment with Epclusa ended, indicated Keenan's liver was "unremarkable with no evidence of cirrhosis" and there were "no mentions of masses or lesions," "[n]o ascites," and "[n]o ductal dilation." [Id.]. The "labs drawn" on May 7, 2020, indicated that Keenan had a "normal liver," his viral load was "undetectable" and that he "had achieved SVR," which is equated with being "cured" of Hepatitis-C.[7] The doctor then explained that "being cured from hepatitis C, does not mean immunity… [and] that [Keenan] can still get reinfected in the future should he do any behaviors or risk factors associated with HCV infection." [Id.].

22.     The served defendants filed motions to dismiss on June 26, 2020 [Dkt. Nos. 40, 43, 45], and Keenan filed a response in opposition to the motions to dismiss on September 9, 2020. [Dkt. No. 52].

*B. Allegations against Defendant Jones*

23.     Keenan's amended complaint sues defendant Jones in her individual and official capacity as the then-Secretary of the Florida Department of Corrections. [Dkt. No. 19 at 7]. The amended complaint mentions the Secretary of the Florida Department of Corrections three times. First, in the paragraph describing the Secretary's duties. [Dkt. No. 19 at 7].[8] The second

---

[7] "Hepatitis is an inflamed liver, most often caused by the hepatitis C, or 'hep C,' virus. SVR stands for sustained virologic response. It means that 12 weeks or more after you stop treatment, tests can't find the hepatitis C virus in your blood. … At that point, the virus is very unlikely to return." https://www.webmd.com/hepatitis/hepatitis-c-svr (last viewed Feb. 3, 2022); see https://www.hepatitis.va.gov/pdf/sustained-virological-response.pdf ("About 99% of people are considered cured of their infection when the virus is not detected 12 weeks or more after completing treatment.") (last viewed Feb. 3, 2022).

[8] The amended complaint alleges that the Secretary of the FDOC

> Is responsible for planning, coordinating and managing the corrections system of the state ensuring that the programs and services of the department are administered in accordance with state and federal laws, rules and regulations, appoints Health Services (directors/assistants), which are headed by a physician licensed under chapter 458 or an osteopathic physician licensed under chapter 459 professionally trained healthcare administrator with progressively responsible experience in health care administration, which shall be responsible for the delivery of health care services to offenders within the system and shall have direct professional authority over such services.

time is in a statement that the "Secretary of the Florida Department of Corrections and w[as] notified repeatedly that Plaintiff's lab results continued to increase from earlier labs and that a fibroscan is required as part of Hep-C treatment work-up." [Dkt. No. 19 at 11]. The third mention alleges that "the failures and omissions of the FL Secretary of FLDOC and Corizon created an unreasonable risk and irreparable harm to Plaintiff's body not being able to accept the new DAA drugs to be effective, when it is finally administered, in violation of the Eighth Amendment. [Id. at 13].

    23.    The amended complaint also includes allegations naming defendant Jones. The first allegation naming her states, "Jones and Corizon denied Plaintiff's request for treatment and the fibroscan to determine proper treatment." [Id. at 11] (citing exhibit C). The next allegation does not cite Jones by name, but states that "*Florida officials* and Corizon refuse to perform the fibroscan and to treat Plaintiff after testing positive for Hep-C and after having knowledge of Plaintiff abnormal labs and an increase in his Hep-C blood levels." [Id.] (emphasis added). Keenan next alleges that Jones and Corizon "failed to include Plaintiff in the class action and have been persistent in denying fibroscan and treatment." [Id. at 12].

---

[Dkt. No. 19 at 7]. The allegations mirror, in large part, a Florida statute that provides, with respect to the health of inmates, that

> (c) The secretary may appoint assistant secretaries, directors, or other such persons that he or she deems are necessary to accomplish the mission and goals of the department, including, but not limited to, the following areas of program responsibility:
>
> ....
>
> 2. Health services, which shall be headed by a physician licensed under chapter 458 or an osteopathic physician licensed under chapter 459, or a professionally trained health care administrator with progressively responsible experience in health care administration. This individual shall be responsible for the delivery of health services to offenders within the system and shall have direct professional authority over such services.

Fla. Stat. § 20.315(c)(2).

24. Towards the end of the amended complaint, Keenan alleges as claims that "Jones and Corizon have never provided the reasons to deny Plaintiff fibroscan to determine treatment."

- Clark, Robinson, and Jones' "discretion under the authority of the interstate corrections compact fails to meet and provide the standard of care for Plaintiff as a Hep-C inmate under its care in violation of the Eighth Amendment;"
- "[t]he policies and methods through which unnecessarily delays treatment for Plaintiff's Hep-C is a direct result of the inaction of ... Jones ... and constitutes deliberate indifference to Plaintiff serious medical need."
- Jones is "responsible for arranging specialized medical care in FLDCO."
- Jones failure to provide for and delay of "fibroscan and treatment to cure/and or reverse the effects of the Hep-C ... constitutes deliberate indifference to Plaintiff's serious medical needs.

[Id. at 13, 14].

## II. Standard of Review

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." ACAFin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 211 (4th Cir. 2019). The Federal Rules of Civil Procedure require that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a). This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard." ACAFin. Guar. Corp., 917 F.3d at 211.

To meet the Rule 8 standard and "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To contain sufficient factual matter to make a claim plausible, the factual content must "allow the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Although the truth of well-pleaded facts is presumed, a court is not bound by the 'legal conclusions drawn from the facts' and 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Riddick v. Watson, 503 F. Supp. 3d 399, 410 (E.D. Va. 2020) (quoting E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)).

Additionally, sworn allegations, such as Plaintiff's allegations regarding the medical condition of his liver and the inability of his liver to accept Hepatitis C treatment, are simply conclusory allegations that fail to constitute any type of admissible evidence. See Hinton v. Amonette, No. No. 3:18cv59, 2021 U.S. Dist. LEXIS 16196, *6 (E.D. Va. Jan. 27, 2021) (plaintiff "as a lay person[,] is not competent to testify that his Hepatitis C, rather than his many other ailments, caused these physical problems') (citing Pearson v. Ramos, 237 F.3d 881, 886 (7th Cir. 2001); Raynor v. Pugh, 817 F.3d 123, 131 (4th Cir. 2016) (Keenan J., concurring) (explaining that a layperson's interpretation of medical tests or "speculation regarding the causes" of a condition "constitute conclusory and inadmissible lay opinion")).

When a defendant makes a factual challenge to subject matter jurisdiction pursuant to Rule 12(b)(1), "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). As noted, defendant Jones's motion to dismiss is a factual challenge, and the Court will "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac Ry. Co., 945 F.2d at 768 (citing Adams, 697 F.2d at 1219)); see also McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002) ("[T]he

11

party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction.") (citation omitted).

> "[I]n a factual challenge to subject matter jurisdiction, a district court can consider extrinsic evidence such as deposition testimony and affidavits. In so doing, a district court is free to weigh the facts and is not constrained to view them in the light most favorable to the plaintiff." Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1336 (11th Cir. 2013) (citations omitted). In addition to the allegations set forth in the Amended Complaint, exhibits attached thereto may be considered. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016); Fed. R. Civ. P. 10 (c).

Consistent with Rule 12(b)(6), the court may consider exhibits attached to the complaint and if a conflict exists between the exhibit and the complaint, the exhibit prevails. See Bryant v. Vargo, No. 1:14cv294, 2016 U.S. Dist. LEXIS 110899, at *6 (E.D. Va. Aug. 17, 2016) (citing U.S. ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (other citations omitted)).

### III. Analysis

Defendant Jones motion to dismiss seeks to dismiss Keenan's Eighth Amendment claim of deliberate indifference against her as both moot, due to a change in circumstances, and because Keenan has not alleged Jones had any personal involvement or knowledge in the decisions made respecting his treatment for Hepatitis-C. Keenan's response implicitly acknowledges Jones argument that he has failed to state a claim against her in her individual capacity [Dkt. No. 77 at 5], but he contends the matter is not moot based upon the medical records attached to the motion to dismiss.

*A. Mootness Doctrine*

"To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) (internal quotation marks omitted). This

12

Court lacks jurisdiction to consider any case or issue that has "lost its character as a present, live controversy" and thereby becomes moot. Hall v. Beals, 396 U.S. 45, 48 (1969). Jones argues that Keenan's Eighth Amendment claim is moot because he has received the tests and treatment he sought, and is essentially cured.

> A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). A change in factual circumstances can moot a case on appeal, such as when the plaintiff receives the relief sought in his or her claim, Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 763 (4th Cir. 2011), or when an event occurs that makes it impossible for the court to grant any effectual relief to the plaintiff, Church of Scientology [v. United States], 506 U.S. [9,] 12 [(1992)]. We have explained that "[m]ootness questions often arise in cases involving inmate challenges to prison policies or conditions," because by the time such a suit is ready for adjudication, the challenged practice or policy may no longer affect the prisoner. Incumaa v. Ozmint, 507 F.3d 281, 286 (4th Cir. 2007).
>
> A claim may be mooted "when the claimant receives the relief he or she sought to obtain through the claim," because the court no longer "has [ ] effective relief to offer." [Friedman's, Inc. v. ]Dunlap, 290 F.3d [191,] 197 [(4th Cir. 2002)] (citations omitted).

Williams v. Ozmint, 716 F.3d 801, 809 (4th Cir. 2013).

Here, Keenan admits that he received the DAAs from November 2019 through February 2020, but denies that he is cured. [Dkt. No. 77 at 2]. He further admits that he has obtained sustained viral response ("SVR"), but alleges that he suffers from "cirrhosis of the liver and nonalcoholic fatty liver disease," both of which were caused by "the *defendants'* deliberate indifference to treat it earlier." [Id.] (emphasis added). Keenan has taken the portions of his medical records upon which he relies out of context.

First, regarding cirrhosis of the liver, Keenan's medical records in August of 2019 and March of 2020 clearly state the there is "no evidence of cirrhosis." [Dkt. No. 70-1 at 34]. Hence, that argument has no factual support or merit. Second, the medical records note some "mild fatty infiltration" of his liver in a February 21, 2019 ultrasound, but the two subsequent

13

ultrasounds on August 22, 2019, and March 16, 2020, both state there is no cirrhosis and the liver is "unremarkable." A portion of the medical records that address nonalcoholic fatty liver disease ("NAFLD") reads as follows:

> Nonalcoholic fatty liver disease – Since prior ultrasound showed fatty infiltration into the liver there is suspicion of NAFLD. BMI is 31 which is consistent with obesity. [Keenan] has worked hard at lo[]sing weight and is down 10 pounds from November 2019. Discussed importance of weight loss of at least 10% of body weight with not lo[]sing more than 2 pounds per week to prevent rebound, increased exercise, caloric reduction[,] and diet management on not only liver related complications but also on non-liver related complications. *Patient verbalized understanding.*

[Dkt. No. 70-1 at 34-35] (emphasis added). The medical records expressly do not state Keenan's NAFLD is related to Hepatitis-C, and clearly indicate that it is being treated as being caused by obesity and is being treated with "increased exercise, caloric reduction[,] and diet management." [Id.].

Keenan also appears to claim that he has suffered "substantial harm" as a result of the delay in his treatment. [Dkt. No. 77 at 3-4].[9] In support of his claim of substantial harm he again cites to the medical records alleging that his doctor discussed the "negative 'natural course of the disease' over Plaintiff's remaining life relative to his cirrhosis of the liver" and that Keenan

---

[9] This Court has held that a state department of corrections can implement a system that prioritizes treatment of HCV inmates with DAAs, which treated those with "liver scarring or fibrosis, as well as those inmates with medical conditions that could exacerbate liver disease (such as HIV)," while other inmates "received ongoing chronic care monitoring and routine testing to watch for signs of disease progression." Hinton, 2021 U.S. Dist. LEXIS 16196, *19. In reaching that conclusion, the Court relied on the Eleventh Circuit's decision, Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263 (11th Cir. 2020), in which that court held that a similar system did not reflect deliberate indifference for Florida inmates. Hinton, 2021 U.S. Dist. LEXIS 16196, *19 n.7 (citing Hoffer, 973 F.3d at 1278).

> Because the Secretary has implemented a treatment plan that provides "minimally adequate care," we cannot say that his conduct is so reckless or conscience-shocking as to constitute deliberate indifference. Accordingly, the plaintiffs' Eighth Amendment claim fails as a matter of law. We reverse the district court's decision inasmuch as it requires DAA treatment for all F0-and F1-level inmates, vacate that portion of the injunction, and remand with instructions to grant summary judgment for the Secretary on that issue.

Id. at 1278-79. Although not controlling, Hoffer is thorough and well-reasoned.

had to "alter his diet and body weight for life due to 'fatty infiltration into the liver of NAFLD.'" [Id. at 4] (citing Dkt. No. 70-1 at 34). Keenan, again, takes snippets of the records out of context.

The doctor, however, never described the "negative" course of cirrhosis over Keenan's remaining lifetime. Instead, the doctor noted that because of the SVR, see, supra note 7, Keenan was considered cured, which is supported by the medical tests. The doctor, however, did caution Keenan that cured did not mean that he was immune and that he could in fact be reinfected should he engage in "behaviors or risk factors associated with HCV infection" which he noted including "sharing needles, razors, toothbrushes, or other blood containing items" and sexual activity. [Id. at 35].[10] Keenan had a history of illicit intravenous drug use of cocaine and heroin as late as 2017 and tattoos. [Id. at 33]. The doctor provided additional advice that if tested for HCV he would test positive, but that his "viral load should remain undetectable for life." [Id. at 34]. The doctor stressed the importance of Keenan's diet and exercise, and that Keenan should be tested via ultrasound every six months for Hepatocellular carcinoma ("HCC").[11] The doctor's advice on diet and weight control has already been set forth herein, see supra at 14, and is as much related to his obesity as any other health concern.

In sum, Keenan has not put forth any evidence that his amended complaint, with respect to injunctive relief, is not moot. See Bush v. Doe (I), 858 F. App'x 520, 522 n.3 (3d Cir. 2021)

---

[10] The medical records indicate that Keenan "was diagnosed with HCV in 2015 and likely acquired the virus from either past illicit drug use or nonprofessional tattoos." [Dkt. No. 70-1 at 32].

[11] HCC is not caused by Hepatitis-C, but both Hepatitis-C and Hepatitis-B, as well as many other life-style choices, are risk factors for HCC. See https://www.webmd.com/cancer/hepatocellular-carcinoma (last viewed Jan. 25, 2022).

(finding the receipt of antiviral treatment to treat Hepatitis-C moots a claim for injunctive relief); Hinton, 2021 U.S. Dist. LEXIS 16196, at *16-17.[12]

### B. Defendant Jones

An Eighth Amendment claim relating to medical care in prison requires a plaintiff to "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Thus, a plaintiff must allege two distinct elements to support a claim. First, he must allege a sufficiently serious medical need that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Second, a plaintiff must allege that the defendant was deliberately indifferent to his serious medical need. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An assertion of mere negligence or even malpractice is not sufficient to state an Eighth Amendment violation. See Estelle, 429 U.S. at 106. Instead, "an official acts with deliberate indifference *if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them.*" DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (emphasis added). Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). Absent exceptional circumstances, a plaintiff cannot establish a cognizable deliberate indifference claim when there exists a mere disagreement between the plaintiff and the prison official over the proper medical care. Wright v. Collins, 766 F.2d 841,

---

[12] On May 11, 2020, Keenan's doctor noted in Keenan's medical record that "[f]rom a liver standpoint [Keenan] had no new complaints or issues." [Dkt. No. 70-1 at 32].

849 (4th Cir. 1985); see also Hixon v. Moran, 1 F.4th 297, 303 (4th Cir. 2021) ("disagreement among reasonable medical professionals is not sufficient to sustain a deliberate indifference claim").

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. See Farmer, 511 U.S. at 837. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle, 429 U.S. at 105–06). Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (citing Farmer, 511 U.S. at 837); see Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in a civil rights case is "personal, based upon each defendant's own constitutional violations"); Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (to satisfy the second prong of Farmer, "the official in question [must have] subjectively recognized a substantial risk of harm.... [and] the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" (quoting Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997)); see also Garraghty v. Va. Dep't of Corr., 52 F.3d 1274, 1280 (4th Cir. 1995); Wright, 766 F.2d at 850 "a defendant "must have had personal knowledge of and involvement in the alleged deprivation of [plaintiff]'s rights in order to be liable"). Here, being diagnosed with Hepatitis-C does satisfies the serious medical need prong of a deliberate indifference claim.

While this civil action was still pending in Florida, that district court's screening order noted that Keenan had failed to state a claim against a defendant and noted the deficiencies that Keenan had to address.

> Plaintiff alleges that "Defendants" collectively took actions. That is not sufficient. A Defendant must be advised by the factual allegations of a complaint what Plaintiff contends the Defendant did, or failed to do, that violates the Plaintiff's constitutional rights. Thus, Plaintiff's allegations must alert each named Defendant to the basis of the claim and provide facts supporting that claim.

[Dkt. No. 7 at 2-3] (Kennan v. Jones, et al., No. 4:19cv81 (N.D. Fla. May 2, 2019). The motion to dismiss, filed on August 9, 2021, raises the same point. Keenan, however, has not cured the defect and instead alleges that defendant Jones knew or should have known that he had "repeatedly sought medical treatment only to be denied even after the Defendants were aware of his cirrhosis." [Dkt. No. 77 at 5]. Keenan then points to the October 17, 2017 denial of his request for a fibroscan by Dr. Cherry of Corizon Health Care. The record establishes that Keenan has been aware his request for a fibroscan was denied by "Corizon of Florida," since before he filed his complaint on February 8, 2019 because he included an email from the FDOC (K. Collins) to the VDOC dated December 15, 2015 advising the VDOC that the request for a fibroscan had been denied. [Dkt. No. 1 at 27].

Based upon his response to the motion to dismiss, it appears that Keenan seeks to hold Jones liable for his alleged deliberate indifference claim under a theory of respondeat superior.

> [I]t is firmly established that § 1983 liability cannot be predicated on a theory of respondeat superior. See Iqbal, 556 U.S. at 676 ("Government officials may not be held liable [under § 1983] for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); Clark v. Md. Dep't of Pub. Safety & Corr. Servs., 316 F. App'x 279, 282 (4th Cir. 2009) (unpublished per curiam) (stating that "the principles of respondeat superior have no application to § 1983 claims"); Harbeck v. Smith, 814 F. Supp. 2d 608, 626 (E.D. Va. 2011) (same).

Riddick v. Watson, 503 F. Supp. 3d 399, 422 (E.D. Va. 2020); see also West v. Atkins, 487 U.S. 42, 48 (1988) (a plaintiff must allege facts indicating that he was deprived of rights guaranteed by the Constitution or laws of the United States and that the alleged deprivation resulted from conduct committed by a person acting under color of state law).

Keenan alleged and acknowledge in his amended complaint that Jones, as the Secretary of the Florida Department of Corrections, *appointed* persons to positions that oversaw the provision of health services to inmates. [Dkt. No. 19 at 7]. His allegations mirror a Florida statute that authorizes the appointment of such a person and the statute requires that such person be "a physician licensed … an osteopathic physician … or a professionally trained health care administrator," and that "[t]his individual shall be responsible for the delivery of health services to offenders within the system and shall have direct professional authority over such services." See Fla. Stat. § 20.315(c)(2).[13]

Here, apart from reciting Jones' responsibilities in her former position, Keenan has failed to allege that defendant Jones did anything at all. Keenan has not alleged any personal involvement by Jones in the decisions, treatment, or correspondence regarding any of his medical care. The complaint raises no more than a "sheer possibility" that Jones "acted unlawfully," and, therefore, fails to state a plausible claim for relief against her in her individual capacity. Iqbal, 556 U.S. at 678.

*C. Eleventh Amendment Immunity*

Jones also raises Eleventh Amendment immunity, which is applicable in cases seeking money damages, but it does not bar a suit against state officials that seeks only "injunctive relief to prevent a continuing violation of federal law." Green v. Mansour, 474 U.S. 64, 68 (1985)

---

[13] It is clear, that Florida, understandably, has devised a system that allows it administrators to rely on the medical advice of medical professionals. Prison officials, such as Jones, are entitled to rely on the opinions, judgment, and expertise of medical personnel. Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990); see, e.g., Peralta v. Dillard, 744 F.3d 1076, 1086-87 (9th Cir. 2014) (en banc) (affirming judgment as a matter of law on deliberate indifference claim for prison administrative officer who relied on medical opinions of doctors who had investigated inmate's complaint); Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants … can rely on the expertise of medical personnel. We have previously stated that if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). It is not the function of prison administrators to second guess the good faith treatment decisions of licensed physicians. Shakka, 71 F.3d at 167.

(citation omitted). Jones was sued in her individual and official capacity and "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); see also Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 482 (4th Cir. 2005) ("Eleventh Amendment immunity questions as soon as possible after the State asserts its immunity.").

There is no dispute of fact that Jones, at the relevant times, was a state official. Consequently, Jones is immune for monetary damages. See Hutto v. S.C. Retirement Sys., 773 F.3d 536, 549 (4th Cir. 2014) (state officials sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State. Keenan's response is simply to state Jones is a state actor and therefore she is liable to him and not "covered by the 11th Amendment immunity due to her direct actions." [Dkt. No. 77 at 5]. Keenan's response repeats his conclusory assertions against Jones, which the Court found insufficient in analyzing his claim against her in her individual capacity. See, supra at 15-18.

### IV. Conclusion

For the foregoing reasons, defendant Jones motion to dismiss [Dkt. No. 71] must be granted. An appropriate order will issue alongside this memorandum opinion.

Entered this 4th day of Feb., 2022.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge