# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| George W. Keenan, <br> Plaintiff, <br><br> v. <br><br> Julie L. Jones, et al., <br> Defendants. | ) <br> ) <br> ) <br> ) 1:19cv1399 (TSE/TCB) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Plaintiff George W. Keenan ("Keenan" or "Plaintiff"), a Florida inmate in the custody of the Virginia Department of Corrections (VDOC) pursuant to the Interstate Corrections Compact, proceeding pro se, filed a civil action under 42 U.S.C. § 1983 in the United States District Court for the Northern District of Florida on February 8, 2019. Keenan v. Julie L. Jones, et al., No. 4:19cv81. The district court screened the complaint and directed that an amended complaint be filed. An amended complaint was filed on August 23, 2019. [Dkt. No. 19]. The civil action was transferred to this Court on November 1, 2019. [Dkt. No. 25]. On March 24, 2020, the Court reviewed the amended complaint and dismissed defendants Armor Correctional Health Services and Corizon Correctional Care because Plaintiff had not stated a claim against either defendant and directed that the remaining seven defendants be served. [Dkt. No. 27].

Defendants Harold W. Clarke, A. David Robinson, Dr. Amonette, and Beth Cabell filed a motion to dismiss on June 26, 2020, with the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. Nos. 40-42]. Defendants Crystal Allen and Dr. Campbell filed a separate motion to dismiss on June 26, 2020, with the required notice required by Local Civil Rule 7(K) and Roseboro v. Garrison. [Dkt. Nos. 43-44]. Keenan filed a

response opposing the defendants' motions. [Dkt. No. 52]. On March 5, 2021, the Court granted the motions to dismiss by all the defendants except for Dr. Campbell. [Dkt. Nos. 55-56].

Defendant Jones was served on June 17, 2021 [Dkt. No. 61], and on August 9, 2021 Jones filed a motion to dismiss, with the required notice required by Local Civil Rule 7(K) and Roseboro v. Garrison. [Dkt. Nos. 71-73]. Dr. Campbell filed an answer on that same day. [Dkt. No. 74]. Kennan filed a response to the motion to dismiss on November 16, 2021. [Dkt. No. 77]. The motion to dismiss argued that Keenan's claim is moot due to a change in circumstances, and Keenan had failed to state a claim against defendant Jones. The Court granted Jones' motion to dismiss on February 4, 2022. [Dkt. Nos. 79, 80].

The only remaining defendant is Dr. Campbell. The amended complaint filed on August 23, 2019, alleged that Dr. Campbell violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment because he had been denied access to adequate medical care. [Dkt. No. 19 at 13]. In his amended complaint, Plaintiff alleges that the "failures and omissions in the inactions" of Dr. Campbell and others "created an ongoing deteriation (sic) of Plaintiff's body and delaying of treatment, in violation of the Eighth Amendment." [Id. at 13]. The amended complaint further alleges that Dr. Campbell and others were "deliberately indifferent to Plaintiff's serious medical needs, [and] under the guise [that Dr. Campbell] ha[d] no authority medically to treat and/or test the progression of the Hep-C … [he] refuse[d] to take corrective action and to prevent irreparable harm to his organs." [Id.]. Plaintiff also alleges that Dr. Campbell's "failure[]" to have a fibroscan performed, and the delay in the fibroscan test, delayed Plaintiff's "treatment to cure and/or reverse the effects of the Hep-C and to determine the severity to know how to apply treatment constitutes deliberate indifference to Plaintiff's serious medical needs." [Id. at 14]. Dr. Campbell filed a motion a motion for summary judgment on

2

September 27, 2022 with the required notice required by Local Civil Rule 7(K) and Roseboro v. Garrison. [Dkt. Nos. 86-88]. Kennan has not responded. For the reasons explained below, Dr. Campbell's motion for summary judgment must be granted.

## I. Statement of Undisputed Facts

Pursuant to Rule 56, the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court "view[s] the record as a whole and in the light most favorable to the nonmoving party[.]" Lawrence v. Va. Dep't of Corr., 308 F. Supp. 2d 709, 717 (E.D. Va. 2004), aff'd sub nom. Lawrence v. Terrangi, 106 F. App'x 844 (4th Cir. 2004) (citations omitted). "A genuine issue of material fact exists only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Hixson v. Moran, 1 F.4th 297, 302 (4th Cir. 2021) (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (internal quotation marks omitted)).

In determining whether a dispute as to a genuine issue of material fact exists, "the evidence of the nonmovant is to be believed, and all justifiable inference are to be drawn in his behalf." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (citation omitted)). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Hixson, 1 F.4th at 302 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)) (emphasis in original). "'Conclusory or speculative allegations do not suffice' to defeat summary judgment, 'nor does a mere scintilla of evidence in support of [the non-moving party's] case' suffice." Goodman v. Runion, 676 F. App'x 156, 159 (4th Cir. 2017) (citation omitted) (per curiam); see also Lyles v. Stirling, 844 F. App'x 651, 652 (4th Cir. 2021) (per curiam). A court must enter judgment

3

against a party who fails to establish the existence of an essential element of his claim that he has the burden of proving at trial. Johnson, 145 F.3d at 166–67 (citation omitted).

The following undisputed facts support Dr. Campbell's motion for summary judgment:

1. The Florida Department of Corrections ("FDOC") transferred Keenan to the Virginia Department of Corrections ("VDOC") on November 10, 2010. [Dkt No. 19 at 8].

2. The result of tests performed on November 26, 2015 indicated Keenan had tested positive for Hepatitis-C (also referred to as "HCV" or "Hep-C"). [Dkt No. 1 at 9, 17].

3. Pursuant to the provisions of the Interstate Corrections Compact, Keenan's medical providers at the VDOC facility where he was incarcerated were required to submit an Out-of-State Medical Pre-Authorization Request to FDOC for medical treatment for Keenan who had been in VDOC custody as an Interstate Inmate Housed Out of Florida pursuant to the Interstate Corrections Compact since 2010. [Dkt No. 70-1 at 2, 13].[1]

---

[1] Under the interstate compact

> Inmates from the sending state shall receive such medical, psychiatric, and dental treatment as may be necessary to safeguard their health ... Unless an emergency is involved, the receiving state shall contact the sending state for advance authority in writing before incurring medical, psychiatric, or dental expense for which the sending state is responsible under the terms of this contract. In an emergency, the receiving state may proceed with the necessary treatment without prior authority, but in every such case the receiving state shall notify the sending state immediately and furnish full information regarding the nature of the illness, the type of treatment to be provided and the estimated cost thereof.
>
> (b) When ... treatment requires removal of the inmate from the institution, the inmate shall be removed only after notification to the sending state. In the event of an emergency, which does not permit prior notification, the institution shall notify the sending state as promptly thereafter as practicable....
>
> (c) *Any ... cost shall be considered normal costs incidental to the operation of the receiving state if the service is rendered by staff personnel and in regularly maintained facilities operated or utilized by the institution as part of the health or correctional program thereof and if the inmate requires no special medication, drugs, equipment, anesthetics, surgery, or nursing care in addition to that commonly available on an infirmary basis. The costs of any special services, medication, equipment, surgical, or nursing care shall be chargeable to the sending state.*

[Dkt. No. 1 at 35] (emphasis added).

4. On November 18, 2015, the VDOC's requested a "fibroscan treatment" for Keenan. The FDOC denied this request on December 17, 2015. [Dkt No. 70-1 at 13]. The request was made through the VDOC's Interstate Corrections Compact Coordinator and the response denying the request indicated it was denied "by the Office of Health Services per Corizon." [Dkt Nos. 19 at 10; 70-1 at 13]. The denial referenced the data provided and the response indicated that Keenan's test results were below the "BOP guidelines" which the FDOC was following at that time, and the data indicated "fibroscan was not recommended" and Keenan was "safe for monitoring for now." [Dkt. No 19 at 10; 70-1 at 13].

5. Keenan was examined and treated by Dr. Campbell during 2016 and the first seven months of 2017. There were no signs that Keenan was having any medical issues that related to Hepatitis-C or required any type of treatment other than regular monitoring for that medical condition.

6. On August 2, 2017, defendant Dr. Campbell sent a second request to FDOC to approve a fibroscan for Keenan. [Dkt. No. 70-1 at 19]. In his request, Dr. Campbell noted an increase in Keenan's test scores on April 6, 2017, (the APRI was 0.726, and the FIB-4 was 0.86), and asked the FDOC to approve "a fibroscan as part of a Hepatitis-C treatment work-up." [Dkt. No 70-1 at 19].

7. The VDOC's 2015 Guidelines for Hepatisis-C patients used two scores based upon blood tests to determine how to treat Hepatitis-C patients: an "Aspartate Aminotransferase to Platelet ratio" ("APRI") score and a "Fibrosis-4 index" ("FIB-4") score.[2]

- APRI score less than 0.5 and FIB-4 score less than 1.45: Offender is monitored but not referred to VCU for evaluation. Inmates in this category will receive periodic laboratory blood testing and chronic care appointments with a medical provider at the institution.

---

[2] See Hinton v. Amonette, No. 3:18cv59, 2021 U.S. Dist. LEXIS 16196, *10 (E.D. Va. Jan. 27, 2021).

5

- APRI score of 0.5 to 1.5 and FIB-4 score is between 1.45 and 3.25: Indeterminate range; requires additional testing to determine whether the offender should be referred for evaluation.
- APRI score greater than 1.5 and FIB-4 score greater than 3.25: Offender is automatically referred to VCU for evaluation without any additional testing.

Id. at 10-11.

8. Keenan's medical records indicate that; on November 15, 2015, Keenan's APRI was 0.784 and his FIB-4 score was 0.86; on July 8, 2016, Keenan's APRI was 0.222 and his FIB-4 score was 0.69; on January 6, 2017, the APRI was 0.380, and the FIB-4 was 4.070; on April 6, 2017, the APRI was 0.726, and the FIB-4 was 0.86; and on October 6, 2018, the APRI was 0.466, and the FIB-4 score was 0.75. [Dkt. Nos. 1 at 19, 20, 21, 26; 70-1 at 13, 19, 21, 22].

9. The August 2, 2017 request was denied on October 17, 2017 by Dr. Cherry of Corizon Health Care:

> Currently Florida is following recent BOP guidelines and fibroscan is not recommended. Typically we prioritize based on APRI scores starting at 2.0. This is more an indication of cirrhosis and would be prioritized to a higher level of treatment. An APRI of 0.74 is safe for monitoring for now.

[Dkt. Nos. 19 at 10; 70-1 at 13, 14].

10. Prior to the denial, Keenan had filed a grievance with the VDOC. The Level I response from the VDOC's warden at St. Brides Correctional Center notes the prior denial in 2015 by FDOC, and that a request for treatment was currently pending with FDOC. The response also states that Keenan's condition did not qualify as an emergency. The Level II response from the Health Services Director determined the grievance was unfounded and agreed with the Level I response. [Dkt. No. 1 at 8-13].

11. Approximately two months after FDOC denied the request for a fibroscan in 2017, Keenan submitted a VDOC Offender Request form asking for a fibroscan on January 10, 2018. Crystal Allen who was the H.S.A. at the facility in Virginia where Keenan was housed at

6

that time responded to that request and told Keenan that a doctor's order was necessary for a fibroscan and because he was detained for Florida under the interstate compact, Florida had to approve the fibroscan and "Florida had said no twice to the test." [Dkt. No. 1 at 32].

12. Keenan submitted another VDOC Offender Request form seeking a fibroscan on May 10, 2018, and Crystal Allen provided a similar response noting the FDOC had already denied the request from Dr. Campbell for a fibroscan twice. [Id. at 33].

13. Keenan submitted a third VDOC Offender Request on October 31, 2018 asking for VDOC to check with FDOC. The response from Ms. Searlemon stated that they were checking with Florida regarding any changes in treatment procedures for Hepatitis-C offenders. [Id. at 34].

14. On February 8, 2019, Keenan filed his original complaint in the United States District Court for the Northern District of Florida against Dr. Campbell and others alleging that various defendants had violated his Eighth Amendment right to be free from cruel and unusual punishment by receiving access to adequate medical care pursuant to 42 U.S.C.§ 1983.

15. On February 13, 2019, Donna L. Graham, RN, Utilization Contract Monitors, Office of Health Services, FDOC, sent an email to K.C. Collins, Private/Interstate Coordinator, Office of Health Services, FDOC, informing Collins that a fibroscan had been approved for Keenan. [Dkt. No. 70-1 at 11]. An ultrasound was done in February 2019, and the fibroscan was done in June 2019. [Id. at 32].

16. The February 13, 2019 ultrasound showed his liver was "slightly enlarged … with mild fatty infiltration noted … but no masses or ductal dilation." [Id. at 34].

17. In March and April 2019, Collins asked VDOC personnel to inform Collins of the different medications available to treat Hepatitis-C and the cost of each, and that FDOC was

7

authorizing treatment after review of the test results. [Id. at 5-9]. On April 9, 2019, Collins sent an email to VDOC personnel informing them that FDOC had approved Keenan "to receive Epclusa x 84." [Dkt. No. 70-1 at 4]. Epclusa is a DAA[3] used to treat Hepatitis-C.

18. On May 2, 2019, the district court in Florida screened the complaint and directed that an amended complaint be filed. [Dkt. No. 7].

19. On August 23, 2019, Keenan filed his amended complaint. In the prayer for relief of the amended complaint, Keenan sought

> "prospective relief for evaluation/fibroscan to determine treatment and to begin receiving treatment as soon as practical to stop and reverse the deteriorating effects [of Hepatitis C]. Plaintiff seeks the costs of this action. Plaintiff seeks monetary relief for deliberate indifference, intentional callous disregard to Plaintiff's serious medical needs under the Eighth Amendment and any other appropriate relief ordered by the Court and/or is deemed proper."

[Dkt. No. 19 at 16]

20. The day before he filed the amended complaint, on August 22, 2019, another ultrasound was performed and found Keenan's liver was "unremarkable," "no evidence of cirrhosis as ascites,"[4] and "[n]o ductal dilation." [Dkt. No. 70-1 at 34]. His treatment with Epclusa began on November 15, 2019, and it was completed on February 6, 2020. [Id. at 32].

21. The civil action originally filed by Keenan in Florida was transferred to this Court on November 1, 2019. [Dkt. No. 25].

22. On May 11, 2020, Keenan was seen for a follow-up to his treatment for Hepatitis-C, which had ended three months earlier. [Id.]. Keenan's abdomen was "[s]oft, nontender,

---

[3] "DAA" drugs refer to "direct acting anti-virals," which are drugs used to treat Hepatitis-C. See https://hepatitisc.net/living/epclusa (last viewed Nov. 1, 2022).

[4] "Ascites" is a buildup of fluid in the abdomen "often due to severe liver disease" and the extra fluid increases the pressure in the abdomen, which "blocks blood flow in the liver" and "[o]ver time this keeps your kidneys from removing excess salt from your body" and "in turn, causes fluid to build up." https://www.webmd.com/digestive-disorders/ascites-medref (last viewed Nov. 1, 2022).

8

nondistended. No ascities. Bowel sounds active." [Id. at 33]. The Hepatitis-C viral load was "[u]ndetectable." [Id. at 34].[5] An ultrasound conducted on March 16, 2020, six weeks after his treatment with Epclusa ended, indicated Keenan's liver was "unremarkable with no evidence of cirrhosis" and there were "no mentions of masses or lesions," "[n]o ascites," and "[n]o ductal dilation." [Id.]. The "labs drawn" on May 7, 2020, indicated that Keenan had a "normal liver," his viral load was "undetectable" and that he "had achieved SVR," which is equated with being "cured" of Hepatitis-C. [Id.].

## II. Standard of Review

While it is true that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment[,]" it is equally true that not every claim by a prisoner that he has "not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104–05 (1976) (citation omitted). Rather, to prove a claim of deliberate indifference in violation of the Eighth Amendment, the Plaintiff must satisfy a two-prong test consisting of both an objective and a subjective component. In short, "[t]he plaintiff must demonstrate that the [defendant] acted with deliberate indifference (subjective) to the inmate's serious medical needs (objective)." Hixson, 1 F.4th at 302 (quoting Iko v. Shreve, 535 F3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted)) (alteration in original). The objective component of the test for deliberate indifference requires that "the inmate's medical condition must be 'serious'— 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that

---

[5] "Hepatitis is an inflamed liver, most often caused by the hepatitis C, or 'hep C,' virus. SVR stands for sustained virologic response. It means that 12 weeks or more after you stop treatment, tests can't find the hepatitis C virus in your blood. ... At that point, the virus is very unlikely to return." https://www.webmd.com/hepatitis/hepatitis-c-svr (last viewed Nov. 1, 2022); see https://www.hepatitis.va.gov/pdf/sustained-virological-response.pdf ("About 99% of people are considered cured of their infection when the virus is not detected 12 weeks or more after completing treatment.") (last viewed Nov. 1, 2022).

9

even a lay person would easily recognize the necessity for a doctor's attention.'" Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (quoting Iko, 535 F.3d at 241).

Under the subjective prong of the test, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)) (emphasis added). This subjective prong establishes "a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." Id. (citing Estelle, 429 U.S. at 106); see also Grayson v. Peed, 195 F.3d 692, 695–96 (4th Cir. 1999). Moreover, "[t]o establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted).

Deliberate indifference, then, "is a very high standard-- a showing of mere negligence will not meet it." Grayson, 195 F.3d at 695 (citing Estelle, 429 U.S. at 105–06); see also Iko, 535 F.3d at 241 (noting that the subjective component "sets a very high bar to recovery") (citation omitted). It is well established that a prison healthcare provider is not deliberately indifferent if he responds reasonably to the risks of which he knows. Brown v. Harris, 240 F.3d 383, 390–91 (4th Cir. 2001). Such official is not deliberately indifferent simply for failing to take all actions or precautions that he "could have" taken or even "should have" taken. Id. at 390. Rather, an official is deliberately indifferent only when he "disregard[s] an excessive risk" to the inmate. Id. at 390–91 (quoting Farmer, 511 U.S. at 837) (emphasis added by court); see also Wilder v. Byars, No. 3:12-1743, 2013 U.S. Dist. LEXIS 86760, at *13 (D.S.C. May 31, 2013), adopted by

2013 U.S. Dist. LEXIS 86594 (D.S.C. June 20, 2013) (citing Estelle, 429 U.S. at 106; Farmer, 511 U.S. at 837–38; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986)) ("Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail.").

*A. Deliberate Indifference*

Dr. Campbell's motion admits for purposes of the motion that Plaintiff's Hepatitis-C was a serious medical need and argues that he was not deliberately indifferent to that need. In his role as the medical director at St. Bride's, Dr. Campbell served as the primary care physician for the inmates/patients at that facility. In that capacity, Dr. Campbell was limited in what he could do to assist Keenan by the provisions of the Interstate Corrections Compact, which required him to seek funding and approval for treatment for Keenan through FDOC.

Keenan's medical records [Dkt. No. 70-1], establish that Dr. Campbell was not deliberately indifferent to his medical needs and treated Keenan's medical condition by making requests to the FDOC for specific treatment for Keenan's Hepatitis-C and made requests to the FDOC because he was limited in what he could do with respect to treating Keenan by the Interstate Corrections Compact. The medical records, as well as sworn affidavits that Dr. Campbell relies upon, establish the Dr. Campbell was aware of Plaintiff's medical condition and took steps to obtain treatment for him. The records also demonstrate that the FDOC made the decisions on Keenan's treatment, and those decisions were based on the screening tests that were requested and obtained by Dr. Campbell.[6] Under the Interstate Corrections Compact, the FDOC

---

[6] See Lowe v. Davenport, 442 F. App'x 955, 956 (5th Cir. 2011) (stating that defendant that lacked the authority to prescribe medications was not deliberately indifferent); Thayer v. Adams, 364 F. App'x 883, 887, 891 (5th Cir. 2010) (the "scope of [the defendant nurses] practice" did not include ordering "any treatment or medication for any patient" and because the nurses "were not empowered to take action contrary to doctor's orders," they were not deliberately indifferent to plaintiff's pain).

was the decision maker as to whether Plaintiff should be referred for further treatment for his Hepatitis-C and Dr. Campbell had no authority to override the FDOC's decisions.

The records also demonstrate that Dr. Campbell was not deliberately indifferent in his care and treatment of Keenan, and provided Keenan with the treatment that he could and that Dr. Campbell took repeated steps to assist Keenan with getting the treatment that he needed. See, e.g., Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (explaining that the physician defendant had provided the appellant with medical treatment on numerous occasions and that appellant's allegation that his medical care was "inadequate would, at most, constitute a claim of medical malpractice"). The Court, therefore, concludes that a reasonable jury would not find that Dr. Campbell was deliberately indifferent to Keenan's medical needs.

*B. Significant Injury*

Further, to prove a deliberate indifference claim, Keenan also must show he suffered a "'significant injury' resulting from the deliberate indifference." Lester v. Clark, No. 7:16-cv-00312, 2018 U.S. Dist. LEXIS 206560, at *12 (W.D. Va. Dec. 6, 2018) (citation omitted); see also id. (quotation omitted) ("[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.") (citation omitted). In addition, if a deliberate indifference claim is based on a delay in medical care, as here, the Fourth Circuit has held that "there is no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a '*marked*' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018); (citing Webb v. Hamidullah, 281 F. App'x 159, 166–67 (4th Cir. 2008)).

In this case, Keenan does not have the requisite injury or damages to prove a claim for deliberate indifference. The Amended Complaint is vague as to what injury Dr. Campbell's

12

actions (or inactions) are alleged to have caused. It is undisputed, however, that Keenan has been successfully treated for and cured of his Hepatitis-C. (Dkt. No. 70-1 at 32-34). Ultimately, then, Keenan has not identified any injury that he suffered because of any failure to provide treatment during the period that the treatment was delayed.[7] Another district court came to a similar conclusion.

In Tunstall-Bey v. Smith, a district court in North Carolina found a plaintiff could not establish a delay resulted in significant injury because "the undisputed evidence show[ed] he ha[d] been cured of Hepatitis C and the delay in treatment did not cause any significant harm to his liver." Tunstall-Bey v. Smith, No. 5:15CT3334, 2019 U. S. Dist. LEXIS 53533, 11-12 (E.D. N.C. Mar. 29, 2019) (internal citation omitted). Like in Tunstall-Bey, there is no evidence in this case that "the delayed treatment itself (as opposed to his pre-existing Hepatitis C) caused 'marked exacerbation' of his symptoms or substantial injury." Id. at *12 (quoting Formica, 739

---

[7] The Fourth Circuit has recently commented on delay in the in the context of the provision of medical services to inmates and observed that "[n]ot all medical delays" constitute deliberate indifference and "[i]t would be wrong to turn the everyday inconveniences and frictions associated with seeking medical care into constitutional violations whenever they occur within the prison walls." Moskos v. Hardee, 24 F.4d 289, 298 (4th Cir. 2022). Moskos held that in "circumstances ... involving a short delay ..., without any aggravating factors such as a serious medical reaction, courts have consistently found that the objective prong is not satisfied." Id. at 18 (citations omitted). "A commonplace medical delay such as that experienced in everyday life will only rarely suffice to constitute an Eighth Amendment violation, absent the unusual circumstances where the delay itself places the prisoner at 'substantial risk of serious harm,' such as where the prisoner's condition deteriorates markedly or the ailment is of an urgent nature." Id. (emphasis added). In a case similar to Keenan's involving a claim of deliberate indifference by an inmate, the Western District noted that delay in such treatment involves monitoring, testing and treatment (including fibroscans) by an outside provider that necessarily involve several months of delay before the inmate was eventually treated with DAAs. See Wood v. Cutchin, No. 7:20cv719, 2022 U.S. Dist. LEXIS 47673, *17-18 (W.D. Va. Mar. 17, 2022) (finding doctor not deliberately indifferent, even though there were delays of approximately four months for testing and several more months before plaintiff was treated with DAAs, because such delays occur "even for persons who are not incarcerated" and plaintiff did not identify anything the doctor could do "to treat [him] sooner or to give him DAAs sooner") (citing Hinton, 2021 U.S. Dist. LEXIS 16196, at * 15-16 (inmate was monitored with testing for three years after being diagnosed with Hepatitis-C before his results indicated he should be evaluated for DAAs, and granting summary judgment for prison care coordinator who approved plaintiff for outside Hepatitis-C treatment, even though it took more than six months from the time of approval until the care was coordinated and plaintiff began receiving DAAs); Insco v. Wexford Health Sources, Inc., No. 2:19cv612, 2021 U.S. Dist. LEXIS 197284, at *14-15 (S.D.W. Va. Oct. 13, 2021) (granting summary judgment for medical defendants where they monitored plaintiff's lab results for almost two years, rather than immediately putting him on a regimen of DAA drugs because he did suffer any substantial harm)).

F. App'x at 755) (footnote omitted). Absent "actual injury stemming from the delay in treating his condition," a delay in medical treatment is insufficient to prove a claim of deliberate indifference. See also Crigger v. Wright, No. 1:15cv713, 2016 U.S. Dist. LEXIS 53904, at *12 (E.D. Va. Apr. 20, 2016) (granting summary judgment for a doctor at local jail and finding the doctor was not deliberately indifferent for delaying treatment of plaintiff for Hepatitis-C because it "is a slow-moving disease," the lab tests results for his liver did not "indicat[e] significant abnormalities," his symptoms were not "acute," and plaintiff did not show he "suffered any actual injury stemming from the delay in treating" his Hepatitis-C) (citing Webb, 281 F. App'x at 166).

Because Dr. Campbell was not deliberately indifferent and the delay did not result in substantial injury, the Court need not consider defendant Dr. Campbell's remaining assertions.

## IV. Conclusion

For the foregoing reasons, defendant Jones motion to dismiss [Dkt. No. 86] must be granted. An appropriate order will issue alongside this memorandum opinion.

Entered this 2nd day of Nov., 2022.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge

14